FRANCIS COSTELLO, Plaintiff in Error, *v.* CHARLES E. NIXDORFF ET AL., Defendants in Error.

### February 8, 1881.

A failure to give actual notice of the dissolution of a partnership to a former employee will not bind retiring partners for credits given by him to those continuing the business under the old firm name.

ERROR to the St. Louis Circuit Court, BOYLE, J.

*Affirmed.*

G. M. STEWART and PAUL BAKEWELL, for the plaintiff in error: Actual notice of the dissolution was necessary to relieve the retiring partner from liability. — *Carter* v. *Whalley*, 1 Barn. & Adol. 11; *Williams* v. *Keats*, 2 Stark. N. P. 290; *Dolman* v. *Orchard*, 2 Car. & P. 104; *Parkin* v. *Carruthers*, 3 Esp. 248; *Ellis* v. *Bronson*, 40 Ill. 455; *Amidown* v. *Osgood*, 24 Vt. 278; *Gaar* v. *Huggins*, 12 Bush, 259; *Southern* v. *Grim*, 67 Ill. 106; *Speer* v.

*Bishop*, 24 Ohio St. 598 ; *Donzelot* v. *Rawlings*, 58 Mo. 76.

Finkelnburg & Rassieur, for the defendants in error: The appellant was not of that class of persons entitled to notice of the dissolution.—— *Whitman* v. *Leonard*, 3 Pick. 177 ; *Clapp* v. *Rogers*, 12 N. Y. 283 ; *Gaar* v. *Huggins*, 12 Bush, 259.

Lewis, P. J., delivered the opinion of the court.

In the year 1873, the plaintiff was in the employ of G. Meysenburg & Co., a partnership firm, engaged in the wholesale liquor-trade, and while the plaintiff was so employed, the defendant Nixdorff became a member of the firm. Some time after this event the plaintiff gave up his situation, and went on a visit to Ireland. On April 1, 1875, the firm was dissolved by the retirement of Nixdorff, and a new firm was established, bearing the same name, and composed of Meysenburg and the defendant White. Nixdorff remained in the house as a salaried book-keeper until December, 1875. In May, 1875, the plaintiff loaned to the firm of G. Meysenburg & Co. the sum of $750, and in August, 1875, the further sum of $280. This suit is against Nixdorff and White, as partners responsible for the indebtedness of the firm. A jury gave their verdict in favor of Nixdorff and against White. The plaintiff brings up his cause by writ of error.

The court refused to give the following instruction for the plaintiff : —

"If the jury believe and find from the evidence in this case that the defendants and one Gustavus Meysenburg, on or about the year 1872, became copartners in business, under the firm-name of G. Meysenburg & Co., as liquor dealers in the city of St. Louis, and continued in said business in said firm until some time in the year 1875, and that said firm-name was used and continued to be used in said business, with the consent of defendant Nixdorff, until

about the month of December, 1875 ; that the plaintiff knew said firm and the members of it prior to April, 1875, and on or about May, 1875, the plaintiff loaned this firm of 'G. Meysenburg & Co. the sum of $750 for the use of said firm, and on or about the month' of August, 1875, he loaned said firm the further sum of $280 for like purposes ; that at the time he made said loan, he did so believing the firm of G. Meysenburg & Co. was composed of G. Meysenburg and both of said defendants, and did not know or have reasonable cause to believe that defendant Nixdorff had retired from the same, then the said Nixdorff is liable in this action, together with the other defendants, although the jury may believe and find from the evidence that said firm of G. Meysenburg & Co. was dissolved on or about April, 1875, and before either of said sums of money had been loaned said firm by the plaintiff, and that defendant Nixdorff was not a member of it at the date of either of said loans."

The instruction was misleading in its tendency to create the impression that the continued use of the same firm-name after Nixdorff's withdrawal was a circumstance to be considered in aid of the plaintiff's theory that Nixdorff remained responsible as a partner. Nixdorff's name did not appear in the style of the firm, and the use of that style, whether before or after the dissolution, could impart no information to any one as to his being a member of the firm or otherwise. In our view of the case, there are other objections to this instruction, which will hereafter appear.

The court gave the following instruction for the defend-ants : —

" If the jury believe from the evidence that the copart-nership of G. Meysenburg & Co. had been dissolved by the retirement of C. E. Nixdorff before the loans in question were made ; that G. Meysenburg and defendant White thereupon formed a new firm and continued the business under the old firm name ; that' at the time of the dissolu-tion there was .no business connection or relation of any

kind between plaintiff and said old firm ; that he had theretofore been in the employ of said old firm as an agent and salesman, but that said employment had ceased before said dissolution ; that after the dissolution he was again employed as a salesman and agent by the new firm, which position he occupied at the time said loans were made ; that plaintiff never had any dealings or business with said old firm before said dissolution, except such as arose out of his said employment, then plaintiff was not entitled to notice of dissolution of partnership, and the jury will find a verdict for defendant Nixdorff, even though the jury find that plaintiff did not know of said Nixdorff's retirement.''

If A., honestly believing that B. is a member of a partnership firm, gives credit to the firm because of his faith in the probity and responsibility of B., and it afterwards turns out that B. was not a member of the firm, and A. loses his money by the insolvency of the other partners, it is easy to say that A. suffers a detriment which he has not wilfully brought upon himself. But whether B. shall be held to indemnify him, must depend upon something more than the mere fact that A. has made an honest mistake. The mistake may have arisen from A.'s knowledge at a previous date that B. was then a partner, and his ignorance of any change since that time. In this event, the inquiry becomes narrowed down to the question of B.'s responsibility for A.'s ignorance of the dissolution of former partnership relations. Such a responsibility, or the want of it, must be determined by the solution of the question whether any duty rested upon B. to inform A. of the fact of the dissolution.

If any person's knowledge of the former existence of a partnership was derived from common repute, from advertisements, or from personal association and acquaintance with the members of the firm, it could not reasonably be demanded that any more specific or direct means of information should be his right, in order to acquaint him with

the fact of dissolution or to affect him with its natural results. A different conclusion might create enormous hardships. The retiring partner cannot possibly know what persons, or how many, have thus become informed of the personal elements of the partnership. He must therefore stand the risk of liability for debts contracted by the firm since his withdrawal, to every human being whom he has not specially notified of the dissolution. The law imposes no such hardship. But there is a class of persons who are individually known to the members of the firm to have acted upon their faith in the trustworthiness of the several partners, or some of them. These are such as have actually given credit to the partnership as it was formerly constituted. They are necessarily well known to the partners, and there can be no hardship in requiring that each shall be personally notified of any change in the firm. The fact that they have already given credit to the entire firm justifies the reasonable presumption that, in the absence of notice to the contrary, any later credit is given, or intended so to be, to the same entire firm, with all its personal components. Hence the rule of law, which is well settled. An elementary writer states it thus : " In respect to persons who have had dealings with the firm, it is necessary to show either notice to them of a dissolution, or actual knowledge on their part, or, at least, adequate means of knowledge of the fact." Pars. on Part. 412. As to what persons will be considered, for this purpose, as having had " dealings with the firm," it has been held that the rule will not apply to such as have dealt with it exclusively for cash, since they had no interest in knowing who were the members of the firm ( *Clapp* v. *Rogers*, 12 N. Y. 283) ; nor to those whose dealings with the firm were not according to the ordinary course of trade. *Whitman* v. *Leonard*, 3 Pick. 177. It results that persons who have not had dealings with the firm within the application of the rule as stated, are not entitled to actual notice of the dissolution, as a protection against improvident credits

given after that event.   The fact that the plaintiff in this
case was in the employ of the old firm placed him in no
better position than that of any other person who, by mere
personal association, or common repute, had learned who
were the original partners.   There was testimony tending
to show that the dissolution had been regularly advertised
before the money was loaned by the plaintiff.   There was
contradictory testimony as to the plaintiff's actual knowl-
edge of the dissolution.   But, as the case was put by the in-
structions, the controversy turned upon the plaintiff's right
to actual notice of the withdrawal of defendant Nixdorff
from the partnership.

We find that the court committed no error in this respect,
and that the judgment must therefore be affirmed.   The
other judges concur.